NOT FOR PUBLICATION                                    [Doc. No. 72]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MAURICE GOODEN,<br><br>        Plaintiff,<br><br>  v.<br><br>WARDEN MR. MERLINE, SGT. MR.<br>IVL IVCCI, OFC. WILLIAM<br>PLATT, OFC. TIMOTHY KEATING,<br>OFC. JOSEPH CONRAD,<br><br>        Defendants. | Civil No. 07-4716 (RMB/AMD)<br><br><br><br>**OPINION** |

Appearances:

      Maurice Gooden
      # 563121/SBI 14
      New Jersey State Prison
      P.O. Box 861
      Trenton, NJ 08625
         Plaintiff, pro se

      James T. Dugan
      Atlantic County Department of Law
      1333 Atlantic Avenue
      8th Floor
      Atlantic City, NJ 08401
         Attorneys for Defendants

**BUMB**, United States District Judge:

      Defendants Warden Gary Merline, Sergeant Steven Iuliucci,[1]

Officer William Platt, Officer Timothy Keating and Officer Joseph

Conrad (collectively "Defendants") move for summary judgment

---

[1]Although Plaintiff's Complaint lists "Mr. Ivl Ivcci" as a
Defendant, Defendants' summary judgment brief identifies
Defendant as "Steven Iuliucci," improperly pled as "Ivl Ivcci."
Thus, the Court refers to Defendant Ivl Ivcci by the name Steven
Iuliucci.

dismissing the Complaint filed by pro se Plaintiff Maurice Gooden ("Plaintiff").  For the following reasons, Defendants' motion is granted, in part, and reserved, in part.  Plaintiff's claims against Warden Merline and Sergeant Iuliucci are dismissed with prejudice.  The Court reserves decision on Plaintiff's claims against Officers Platt, Officer Keating and Conrad.

## I.   Statement of the Facts[2]

---

[2]Plaintiff filed no response Defendants' summary judgment motion.  Pursuant to Civil Rule 56(e),

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Local Rule 56.1 further mandates:

> The opponent of summary judgment shall furnish...a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

Id.

Plaintiff failed to file a responsive statement of facts. He did, however, submit two letters to the United States Magistrate Judge after Defendants filed the pending motion.  See Dkt. Ent. 74, 77.  In these letters, he refers to the incidents that gave rise to his Complaint.  He also enclosed a picture of

The allegations in Plaintiff's Complaint pertain to two incidents:  the July 25, 2006 incident and the October 15, 2006 incident.

**A.   July 25 Incident**

**1.   Defendants' Account**

Plaintiff, while an inmate at the Atlantic County Jail, participated in a disciplinary hearing with Donald Geiger, an inmate hearing officer.  Def. Ex. E.  During the hearing, a confrontation arose:

> [Plaintiff] became very loud and angry towards Mr. Geiger.
> Witnesses reported that [Plaintiff] leaned up and over his
> chair, yelling at Mr. Geiger, then proceeded to punch Mr.
> Geiger three times in the face.

Id.

---

his alleged injuries, part of an Atlantic County Department of Public Safety report regarding one of the incidents alleged in his complaint, copies of the criminal complaints filed against Plaintiff by Defendant Officer Keating, Defendant Officer Platt and Donald Geiger and a radiology report from Shore Memorial Hospital.  The Court further notes that, before Defendants filed their summary judgment motion, Plaintiff filed a "Response to Pre-Trial Memorandum," wherein he further explains his claims. See Dkt. Ent. 15.

The Court is mindful of Plaintiff's pro se status:  "[w]here the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally."  Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  The Court further recognizes that "an inmate who is proceeding pro se[] is in a decidedly difficult position from which to generate 'record evidence' on his behalf...."  Id. at 326 (quoting Brooks v. Kyler, 204 F.3d 102, 109 (3d Cir. 2000) (internal quotation marks omitted)). "However, pro se plaintiffs are not relieved of the obligation to set forth facts sufficient to survive summary judgment."  Jacobs v. Cumberland County Dept. of Corrections, Civ. No. 09-0133, 2010 WL 5141717, at *3 (D.N.J.  Dec. 8, 2010) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Zilich v. Lucht, 981 F.2d 694, 695-96 (3d Cir. 1992)).  Thus, as more fully explained below, the Court will require a further submission from Plaintiff.

Investigator Luis Munos of the Public Defenders Office reported seeing Plaintiff strike Mr. Geiger.  Def. Ex. F.  In response to the incident, Investigator Munos

> and Mr. Luis Rios immediately grabbed [Plaintiff] and placed him on the wall.  Mr. Munos stated that he had secured [Plaintiff's] right arm behind his back and Mr. Rios had secured the left side.  Mr. Munos stated that Ofc. Johnson immediately responded and called for back up.  Mr. Munos stated that back up arrived with in seconds, and that himself, and Mr. Rios had full control of [Plaintiff] until staff arrived.

Id.

Kathlyn Mitchell, another employee of the Public Defenders Office, reported seeing her co-workers restrain Plaintiff with the help of Officer Johnson.[3]  Def. Ex. G.  She further reported that "when Officers arrived, [Plaintiff] appeared to be resisting and not compiling [sic] with the Officers on scene."  Id.

The victim of Plaintiff's assault, Mr. Geiger, described the aftermath of his attack:

> I was not focusing properly.  I had visitors conducting inmate interviews; one female interviewer behind me.  The guy that attacked me was fighting with other people and I started forward toward the inmate to help keep the inmate from getting free and harming the visitors.  Next thing there are a lot of officers everywhere and the inmate was still fighting.  Then he was being held down on the floor. (I remember seeing an orange clad arm come out of the pile a few times hitting people.)  I don't know how he got to the floor....

Def. Ex. I.

After Officer Johnson called for back up, "[n]umerous personnel responded," Plaintiff "was placed in restraints to the

_____

[3]Plaintiff did not name Officer Johnson as a Defendant.

rear" and Plaintiff "was escorted out of the area." Def. Ex. J, Johnson Report. When Officer Smith[4] arrived on scene, he witnessed Plaintiff resisting Officer Johnson and two unknown males. Def. Ex. J, Smith Report. Officer Tornblom[5] also reported seeing Plaintiff resisting. Def. Ex. J, Tornblum Report. Plaintiff refused orders for Plaintiff to place his hands behind his back. <u>Id.</u> Officers Smith, Clerico[6] and Tornblum "assisted in getting [Plaintiff] down to the ground" and handcuffed Plaintiff. Def. Ex. J, Smith Report, Tornblum Report.

Defendant Officer Platt arrived on scene and observed Plaintiff "on the floor in a prone position...kicking and screaming stating that when he gets up he will [f---] you up." Def. Ex. J, Platt Report. Officer Platt also saw that Mr. Gieger had sustained injuries to his face. <u>Id.</u> Platt reported that he used force against Plaintiff:

> The officers who were already in contact with the violent inmate had been able to force the resisting inmate[']s hands behind his back. Verbal commands were given by this officer to stop resisting. The inmate continued to resist officers['] control. The inmate was helped up and this officer took control of the resisting inmate['s] head. I at that time was able to identify the inmate as [Plaintiff]. I continued to order the resisting inmate to stop resisting and walk. The inmate stated [f---] you. I continued to control the resisting inmate['s] head. I started to apply touch pressure techniques to the inmate['s] mandibular angle area of the left side of the jaw. I continued to give loud verbal commands to the still resisting inmate. Stop resisting and walk. The inmate continued to pull away

---

[4]Plaintiff did not name Officer Smith as a Defendant.

[5]Plaintiff did not name Officer Tornblum as a Defendant

[6]Plaintiff did not name Officer Clerico as a Defendant.

resisting this officer['s] restraint and would not walk
forward by his own power.  The escorting officers utilized
physical force by pushing the restrain[ed] inmate forward
while controlling his upper torso.  This officer continued
touch pressure techniques to the restraint [sic] inmate['s]
mandibular angle area of his jaw while giving verbal
commands to stop resisting and walk forward.  The inmate
still did not comply and was finally able to be brought to
admissions where he was changed into a high security uniform
and placed in full restraints.  All restraints were adjusted
and double locked.  The nurse was brought to the area and
checked for any injuries.  Once cleared the inmate was
escorted to cell 1 intake left and placed into the cell
without further incident.  The inmate was very strong and
was able to resist control of several officers.  The touch
pressure techniques that I applied had little to no effect
on the violent inmate.  It also appeared to this officer
that the inmate has mental health concerns.

Id.

Officer Tornblum reported that Plaintiff "was resistive the

entire time he was being escorted down to admissions."  Def. Ex.

J, Tornblum Report.  Tornblum further reported that when the

Officers moved Plaintiff to a cell, Nurse Krawiec "inspected

[Plaintiff] for any injuries" and "there appeared to be none."

Id.; see also Def. Ex. K, Report of Robert Krawiec, LPN ("I/m

seen, evaluated, no treatment necessary.").

Shift Commander Lieutenant Davenport also reported on

Plaintiff's movements after the assault:

[Plaintiff] was transferred to admissions by staff and
secured in a cell in full restraints until he calm[ed] down.
Restraints w[ere] checked by nurse Kraweic.  Sgt. Cohen
responded to admissions and informed the officers Platt,
Keating Tornblum and Minetti that [Plaintiff] was going to
be transferred to Intake left.  [Plaintiff] was strip[]
searched, changed from orange uniform to a black and white
jump suit and transferred to IL # 1.  [Plaintiff] was then
transferred to Intake by Ofcs. Tornblum, Keating[,] Platt
and Minetti and place[d] in cell 1.  He was ordered to get
down on his knees so that Ofc. Tornblum could take of[f] the

> leg irons.  [Plaintiff] was place[d] in a prone position so
> the bell chain could be removed.  Once all restraints w[ere]
> removed[,] all officer[s] exited the cell without incident.

Def Ex. J, Davenport Report.  Officer Tornblum also reported that

the Officers exited Plaintiff's cell without incident.

Def Ex. J, Tornblum Report.

The victim of Plaintiff's assault, Mr. Geiger, filed

criminal charges.  Def. Ex. E.  Plaintiff also filed criminal

charges against Defendant Officers Platt and Keating as a result

of the July 25 incident.  See Dkt. Ent. 77.

### 2.  Plaintiff's Account

In a document titled "pre-trial memorandum," filed well-

prior to the pending summary judgment motion, Plaintiff alleged

that Officers Platt and Keating attacked him, causing Plaintiff

to sustain "blunt trauma injuries to the face and back, and upper

and lower torso."  See Dkt. Ent. 15.  Plaintiff alleges that

these Officers "kicked and stomped [him] so hard that

[he]...lost...part of [his] tooth."  Id.

Plaintiff alleges that he notified Warden Merline of the

assault, who referred the matter to the Special Investigations

Division ("SID").  Id.  Shortly thereafter, Sergeant Iuliucci

interviewed Plaintiff for the SID.  Id.  Plaintiff informed

Sergeant Iuliucci about the assault and his intent to file

charges.  Id.  Some time after Plaintiff filed charges against

Officers Platt and Keating, Plaintiff informed Sergeant Iuliucci

that Keating and Platt were verbally harassing Plaintiff.  Id.

On October 10, 2006, Plaintiff told Sergeant Iuliucci that he "felt his life was in danger as a result of the charges that were filed" and requested that he "be kept away from these defendant[s] to protect me from any further physical and mental abuse." Id. Sergeant Iuliucci told Plaintiff that the Sergeant would "[s]ee what [he] can do" and would speak with Warden Merline and   Id. Plaintiff never heard back from the Sergeant. Id.

**B.   October 15 Incident**

**1.   Defendants' Account**

On October 15, 2006, Plaintiff refused to allow another inmate to enter his cell. Def. Ex. M. Officer Montoya[7] and Defendant Officer Platt ordered Plaintiff to move back from the cell door so that another inmate could enter. Id. Plaintiff refused. Defendant Officer Keating arrived to assist the Officers. Id. Both Keating and Platt ordered Plaintiff to back away from the cell door. Officer Montoya attempted to place the inmate inside the cell, but Plaintiff "became extremely upset and agitated and refused any inmate to be housed with him." Id. Officer Montoya escorted the other inmate away from the cell, and Officers Platt and Keating "entered into the area to speak to [Plaintiff]." Id.

An investigative report from the incident detailed what followed:

_____

[7]Plaintiff did not name Officer Montoya as a Defendant.

8

> [Plaintiff] became aggressive towards Ofc. Platt by trying
> to push through him to exit the cell area.  Ofc. Keating
> called a code three for officer assistance, [Plaintiff]
> threw several punches and a kick towards Ofc. Platt and then
> assaulted Ofc. Platt by head bunting [sic] him[,] knocking
> Ofc. Platt['s] glasses off his face, then biting Ofc.
> Platt[']s index finger.  [Plaintiff] also assaulted Ofc.
> Keating by punching him several times and kicking Ofc.
> Keating in the leg by the knee area.  Ofc. Platt and Ofc.
> Keating gave continuous commands to [Plaintiff] telling him
> to stop resisting and to put his hands behind his back.
> When additional officers responded[,] [Plaintiff] was placed
> in handcuff restraints and removed from the area.

Id.

Defendant Officer Conrad also reported using force against

Plaintiff:

> This Officer responded...for a code three, officers
> needing assistance.  Upon arriving at [intake housing left]
> with additional staff members, this Officer was directed by
> Officer Montoya to cell # 13.  Upon entering the cell, this
> Officer observed Officers Keating and Platt attempting to
> restrain [Plaintiff].  At this time Officer Platt was
> ordering [Plaintiff] to stop biting [Officer Platt's]
> finger.  This order was given multiple times by Officer
> Platt.  [Plaintiff] refused to comply with [the] order.  At
> this time, this Officer engaged [Plaintiff] by striking
> [Plaintiff] two times with a closed fist to [Plaintiff's]
> right side of his head.  Again, [Plaintiff] was ordered to
> stop biting Officer Platt's finger.  [Plaintiff] again
> refused to comply with these orders.  At this time, this
> Officer struck [Plaintiff] in his right shoulder area with
> two knee strikes.  At this time [Plaintiff] released Officer
> Platt's finger.  [Plaintiff] at this time struck this
> Officer with a closed right hand to this Officer's left
> shoulder area.  At this time several staff members w[ere]
> attempting to restrain [Plaintiff], who continued to be
> combative.  [Plaintiff] was given multiple orders to stop
> resisting and to place his hands behind his back.
> [Plaintiff] continued to resist staff members by refusing to
> give staff his hands, which he was now locking together
> under himself.  After struggling with [Plaintiff], staff
> members w[ere] able to secure both arms.  At this time
> [Plaintiff] was carried to admissions by this Officer along
> with Officers Platt, Keating and Dewees.  Once in
> admissions, [Plaintiff] was placed in the body wrap.

[Plaintiff] was then seen by medical staff who checked all restraints.

Def. Ex. N.

As a result of the October 15 incident, Plaintiff alleges that he chipped a tooth, sustained eye and head injuries, coughed up blood and fractured his rib.  See Compl. at page 5.  Plaintiff was charged with aggravated assault and resisting arrest.[8]  Def. Ex. O.

On October 19, Lieutenant Davenport completed a report regarding the use of force against Plaintiff:

> At th[at] time [Plaintiff] who was in cell, became hostile to the entry of another inmate into the cell and refused to step back as he was pushing to get out of cell when the officer had to stop him by placing his outstretched hand to stop [Plaintiff].  [Plaintiff] smacked the officer['] s hand outward and grabbed the officer['s] arm pulling him.  The officer fearing for his safety utilized a two hand push to free his arm and then had to use strikes to the head of [Plaintiff].  [Plaintiff] continued to violently resist the officer and Officer Keating who also entered the cell in an attempt to control [Plaintiff].  Verbal command[s] were given to [Plaintiff], however he continued to act violently to the staff.  As more staff responded to the scene [Plaintiff] was resisting by punching and kicking the officers.  Several attempts to control and cuff [Plaintiff] failed to control him.  The officer, Platt [,] used knee strikes to the abdominal area of [Plaintiff] and w[as] able to take him to the ground.  During this [Plaintiff] had head butted the officers and attempted to bite staff as well.  [Plaintiff] was cuffed and leg ironed and he continued to resist though [sic] out. ...[Plaintiff was] moved to admissions...and...checked by medical staff and treated for injuries....
> When the incident had started and Code was called I...had the camera turned to the incident.  The camera was

---

[8]The resisting arrest charge was administratively terminated.  See Dkt. Ent. 77.

10

moved to verify the safety of the other officer and the
camera in that area was placed on the inmate as he was
placed into the Guard Wrap system and then moved to cover
the cell once he was placed into it.

During this time the medical staff had seen and treated
the inmate and this was verified on the tape of the
incident.

Def. Ex. P.[9]

Lieutenant Davenport concluded:

Upon review of the on view cameras that w[ere] used in
both intake housing as well as admissions from center
control and the statements and reports of the responding
staff, I found that the Use of Force needed to control the
inmate was warranted due to actions of the inmate and the
resistance to the officers.  Inmate has a history of violent
behavior and assault to staff and others.  The force used
was in keeping with standards of that needed to control
inmate....

Id.

On October 20, 2006, a disciplinary hearing was held, and

Plaintiff was found guilty of certain prohibited acts relating to

the October 15 incident.[10]  Def. Ex. Q.  Plaintiff did not appear

---

[9]In a letter to the Court, Plaintiff complained that
Defendants refused his request to produce video of the incident.
See Dkt. Ent. 74.  Counsel for Defendants represented to the
Court that the video available did not show the interior of
Plaintiff's cell but did show officers responding to the scene.
See Dkt. Ent. 76.  Counsel further informed the Court that "due
to security measures, a CD cannot be sent to plaintiff at New
Jersey State Prison."  Id.  Defendants did not submit video to
support their motion.

[10] Defendants represent in their brief that Plaintiff was
convicted of resisting restraint, assaulting Officers Platt and
Keating, and refusing an order of prison staff.  See Def. Br. at
9.  However, the precise nature of the charges is not entirely
apparent from Defendants' Exhibit Q.  The disciplinary forms
indicate that Plaintiff was found guilty of offenses identified
as "*.002," ".256" and "*.308."  N.J.A.C. 10A:4-4.1(a) lists

at the hearing because of safety concerns arising from his

history of assault.  Id.

### 2.  Plaintiff's Account

In his pre-trial memorandum, Plaintiff alleges that the

following occurred:

> On October 15 2006[,] [four] days after advising
> defendant Iuliucci that my life was in danger, defendant
> Platt came to my cell and advised me that he was moving
> another inmate into my cell.  I advised defendant Platt that
> I had single cell status per the medical staff.  Platt was
> then advised by myself that me and the inmate didn't get a
> long and I wanted no problems;  please call the area
> supervisor.  Defendant Platt responded by stating:  "I'm
> tired of your S***!"  Defendant Platt entered my cell and
> proceeded to punch and kick me.  Defendant Platt was then
> joined by defendant[s] Keating and Conrad.  All three
> defendant[s] attacked me.  Prior to the handcuffs and
> shackles being placed on me, defendant Keating held both
> arms behind my back and yelled:  "GET HIM RAD[,]" referring
> to Defendant Conrad.
> After I was thrown to the ground by those defendant[s],
> I was viciously attacked by kicking, stomping, punching, and
> verbal abuse.  After I was handcuffed and shackled with my
> hands and legs behind my back, defendant Conrad attacked my
> eye that was previously damaged during the first assault on
> July 25, 2006.
> After the October 15, 2006 assault[,] I was denied
> immediate medical treatment.
> For nearly four...hours after the...attack, I literally
> laid on the floor of an unsanitary cell and bled from my
> injuries.  During this four...hour period, I coughed up
> blood and cried out for help...all to no avail or concern to
> any of the defendant[s].

---

inmate prohibited acts and identifies "*.002" as "assaulting any
person" and ".256" as "refusing to obey an order of any staff
member."  There does not appear to be a listing for "*.308" in
the current verison of the New Jersey Administrative Code, or a
listing for "resisting restraint."

> After I was finally seen by the medical staff at the
> jail, I was immediately transported to Shore Memorial
> Hospital in Somers Point[,] New Jersey.
> After I was treated for my injuries, the medical staff
> referred me to a eye specialist because my eye had been
> literally almost kicked out of it['s] socket.

See Dkt. Ent. 15.

Plaintiff further explained his behavior regarding the
October 15 incident in a letter to the Court:  "I ask Ofc.
William Platt to call Sgt. because the person they try to enter
in my cell was a enemy from the streets...."  [Dkt. Ent. 74.]
With the letter, Plaintiff submitted a picture taken after his
return from Shore Memorial Hospital.  Despite the fact that
Plaintiff reports returning from Shore Memorial on October 15, he
alleges in his letter that "[a]ll correction officers denied
medial attention and reported no injuries."  Id.  By separate
letter, Plaintiff explained that he asked Defendant Officer Platt
to call the Sergeant because Plaintiff had criminal charges
pending against Defendant Officers Platt and Keating.  See Dkt.
Ent. 77.  Plaintiff also alleges that he never attempted to exit
his cell.  See id.

Plaintiff filed his Complaint in this Court on October 1,
2007.  The Court reviewed the Complaint pursuant to 28 U.S.C. §§
1915(e) and 1915A and permitted Plaintiff's claims to proceed.
[Dkt. Ent. 2].  The Court then stayed this matter on December 7,

2009, pending resolution of criminal charges relating to
Plaintiff's civil claims and issues relating to Plaintiff's
mental competency.  [Dkt. Ent. 49.]  The Court absolved the stay
on May 11, 2010.  [Dkt. Ent. 62.]  Discovery has concluded, and
Defendants now move for summary judgment.  [Dkt. Ent. 72.]

## II.  **Standard**

Summary judgment should be granted if "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "An issue is
genuine only if there is a sufficient evidentiary basis on which
a reasonable jury could find for the non-moving party, and a
factual dispute is material only if it might affect the outcome
of the suit under governing law."  Kaucher v. County of Bucks,
455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at
trial, 'the moving party may meet its burden on summary judgment
by showing that the nonmoving party's evidence is insufficient to
carry that burden.'"  Id. (quoting Wetzel v. Tucker, 139 F.3d
380, 383 n. 2 (3d Cir. 1998)).  Upon such a showing, the burden
shifts to the non-moving party to produce evidence of a genuine,
factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986).  The non-movant's burden is rigorous:  he or she "must

14

point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 252. Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide'...." Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265 (Brennan, J., dissenting)).

## III. Analysis

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen of the United States or

15

> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

Id.  Therefore, to succeed on his claims, Plaintiff must

establish two elements:  (1) "the violation of a right secured by

the Constitution and laws of the United States" and (2) "that the

alleged deprivation was committed by a person acting under color

of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Here, there is no dispute that the Defendants acted under

color of law.  Thus, the Court considers whether each Defendant

violated Plaintiff's federal rights.

### A.   Warden Merline

Defendants argue that Plaintiff's claim against Warden

Merline rests upon an impermissible theory of respondeat superior

and thus fails as a matter of law.  Plaintiff pleads the

following:

> Administrator Mr. Merline was notify [sic] by remedy forms I
> was being harassed.  And I was assaulted prior to 2nd
> assault.  And was not place in safety.  Instead fearing for
> my life.
>
> . . .
>
> Plaintiff had written grievances about the abuse he was
> subject to and the institution, which was overseen by Warden
> Mr. Merline, knew he needed the safety and protection of the
> jail from these defendants.
>
> . . .

16

>By defendant, Mr. Merline, the Warden of the Atlantic County
>Jail, allowing plaintiff to be subject to this type of
>danger after being placed on notice and well aware of the
>threat posed to plaintiff, has failed to protect him which
>resulted in plaintiff being harassed and injured in a
>significant manner in violation of the due process clause of
>the 14th Amendment of the U.S. Constitution.

See Compl. pages 8, 10 at ¶ 8, 11 at ¶ 19.

Defendants are correct that, to the extent Plaintiff seeks to hold Warden Merline vicariously liable for the alleged wrongful conduct of subordinates, such claim fails as a matter of law.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) ("...[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").  To state a § 1983 claim, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated" federal law. Id. (emphasis added).  Plaintiff here fails to identify any facts demonstrating that Warden Merline had personal involvement, directed or in any way acquiesced to any violation of Plaintiff's rights.  See Santiago v. Warminster Township, 629 F.3d 121, 129 (3d Cir. 2010)(quoting A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) ("'[A] supervisor may be personally liable...if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'").

To the extent Plaintiff seeks to establish personal liability against the Warden by alleging a "failure to protect" claim, such claim also fails.  Plaintiff identifies himself as a pretrial detainee.[11]  See Compl. page nine at ¶ 1.  Plaintiff's claims are thus analyzed under the Due Process Clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 (1979); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000).  Under this standard, the proper inquiry is whether a condition of confinement "amounts to punishment of the detainee."  Bell, 441 U.S. at 535.  In the context of a "failure to protect claim" brought by a pretrial detainee, the Third Circuit adopted the "deliberate indifference" standard applied to Eighth Amendment claims.  See Burton v. Kindle, 401 Fed.Appx. 635, 637 (3d Cir. 2010) ("[W]e conclude that a pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety.").  Under this standard, "a prison official cannot be found liable...for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)(quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

---

[11]Defendants' brief also states that Plaintiff "remains incarcerated waiting adjudication of charges out of Camden and Atlantic County at the current time."  See Def. Br. at 4.

18

The Third Circuit explained:

[t]he knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.  See [Farmer, 511 U.S. at 837-38]. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. See id. at 842.  Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.  See id. at 844.

Id. at 133.  Circumstantial evidence of an excessive risk of harm includes "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past."  Id. at 131 (quoting Farmer, 511 U.S. at 842).  Thus, "[f]or purposes of summary judgment, it is incumbent on the plaintiff to marshal evidence sufficient to raise the inference that a prison official 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'"  Id. at 132 (quoting Farmer, 511 U.S. at 846).

Nothing in the record here raises any inference that Warden Merline knowingly and unreasonably disregarded any excessive risk of harm to Plaintiff.  The record fails to demonstrate that the Warden knew of any threat to Plaintiff's safety prior to the July

19

25 incident.  Thus, any failure to protect claim based on the July incident fails as a matter of law.  And any claim arising from the October incident similarly fails.  At most, the facts demonstrate that the Warden was aware of Plaintiff's allegations regarding the force used against him in July and referred the matter to the Special Investigations Division.  Nothing in the record suggests that the Warden believed the allegations to be true or knew of other evidence lending credibility to the allegations.  See, e.g., Beers-Capitol, 256 F.3d at 140 (noting that although plaintiffs presented evidence that a defendant was aware of allegations of abuse, "there [wa]s no evidence that [the defendant] believed that these allegations were likely to be true, or that the evidence surrounding the allegations was so strong that he must have believed them likely to be true.").

Moreover, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.  Id. at 133 (citing Farmer, 511 U.S. at 844).  Here, not only does the record fail to permit any finding that the Warden knew of, and disregarded, an excessive risk to Plaintiff's safety, the record demonstrates that the Warden took the reasonable step of requesting an

investigation into the allegations.  In other words, the record simply fails to demonstrate deliberate indifference on Warden Merline's part.

Nor can Plaintiff sustain a failure to supervise claim against the Warden:

> to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Here, Plaintiff identifies no policy or practice that created an unreasonable risk that he would suffer harm.  Moreover, nothing in the record establishes that Warden Merline failed to respond to a pattern of past occurrences or that risk was so obvious that the failure to respond, alone, could support finding liability.  See id. at 136.  Rather, Plaintiff's allegations are generalized and conclusory.  There is simply no evidence establishing any nexus between Warden Merline and the alleged acts of the Defendant Officers.  Viewing the facts in a light most favorable to Plaintiff, his claim against Warden Merline fails as a matter of law.

**B.   Sergeant Iuliucci**

21

Plaintiff pleads the following with regard to Sergeant Iuliucci:

On October 10th, 2006, plaintiff was personally interviewed by the Special Investigation Division (SID) or Internal Affairs by the [Sergeant Iuliucci].  After this interview[,] officers Joseph Conrad, William Platt, and Timothy Keating were constantly coming to the lock-up unit (detention) where plaintiff was and verbally harassing him.

Pl. Compl. page 9 at ¶ 7.

At his deposition, Plaintiff further explained his claim:

September 10 I specifically told him that I have a list of how many times Officer Platt and Keating come into my room. I told him that I have criminal charges that I had filed against Officer Platt and Officer Keating on record in the county jail, that these officers is supposed to stay away from me, and it seems to me that they is planning to attack me to countersuit against me.

...

Iulliucci's exact words was there is nothing I can do about it.  The only thing I can tell you is you fill out a restraining order.  That's what he told me.  Five days go by.  They in my cell beating me up.  They got charges against me.  Now my charges doesn't become valid no more because that's a state official.  That's what happened.

...

Q.  So...Stephen Iuliucci,...he should have prevented these guards from being around you?

A.  Correct, because I told him that I feared for my safety....

Def. Ex. U.

Thus, the Court understands Plaintiff to plead that Sergeant Iuliucci violated federal law by failing to protect Plaintiff

from the alleged wrongful acts of Officers Conrad, Platt and Keating.  Like Warden Merline, however, Sergeant Iuliucci cannot be held vicariously liable for any wrongful conduct by Officers Conrad, Platt, and Keating.  First, it is not at all clear that these Officers were subordinates of Sergeant Iuliucci.  And second, as noted, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Iqbal, 129 S.Ct. at 1948.

Any failure to protect claim against Sergeant Iuliucci also fails.  Crediting Plaintiff's account, the facts alleged show, at most, that Sergeant Iuliucci knew that Plaintiff had filed criminal charges against the Defendant Officers based on an alleged assault, that Plaintiff feared that these Officers would assault him and that the Defendant Officers had verbally harassed Plaintiff.  Such facts, however, do not infer that Sergeant Iuliucci knowingly and unreasonably disregarded an objectively intolerable risk of harm to Plaintiff.  While Sergeant Iuliucci was aware of Plaintiff's allegations, nothing in the record suggests that Sergeant Iuliucci believed the allegations or that the Sergeant was aware of other evidence lending credibility to the allegations.  See, e.g., Beers-Capitol, 256 F.3d at 140.

Viewing the facts in a light most favorable to Plaintiff, his claim against Sergeant Iuliucci fails as a matter of law.

**C.  Officers Platt, Keating and Conrad**

Defendants argue that Plaintiff's claims against Defendants Platt, Keating and Conrad also fail as a matter of law.  The Court understands Plaintiff to assert excessive force against Officers Platt, Keating and Conrad.  To the extent Plaintiff intended to state any other claim against Defendants Officers Platt, Keating or Conrad that this Court has not recognized, he must so inform the Court in his sworn statement to be filed, as explained below.

The Third Circuit applies the Eighth Amendment cruel and unusual punishment standard to a pretrial detainee's claim of excessive force arising from a prison disturbance.  <u>Fuentes</u>, 206 F.3d at 347 (citing <u>Whitley v. Albers</u>, 475 U.S. 312 (1986); <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)).  In this context, "[t]he test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Giles</u>, 571 F.3d at 326 (2009) (quoting <u>Whitley</u>, 475 U.S. at 319).  Courts conducting this inquiry must consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the

basis of the facts known to them; and (5) any efforts made
to temper the severity of a forceful response.

Id. (citing Whitley, 475 U.S. at 319).  "Summary judgment in
favor of a defendant is not appropriate if 'it appears that the
evidence, viewed in the light most favorable to the plaintiff,
will support a reliable inference of wantonness in the infliction
of pain.'"  Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at
322).

Defendants argue that the Defendant Officers "acted in good
faith to protect the safety and security of the institution in
response to an inmate who violently attacked a civilian,
assaulted correction officers, refused to obey directions, and
threatened the safety and security of the correctional facility."
Def. Br. at 20.  Defendants further argue that Plaintiff "failed
to adduce evidence of injuries...which, if viewed in the context
of the prison's circumstances he created, would 'support a
reliable inference of wantonness in the infliction of pain.'"[12]
Id. at 20-21 (quoting Whitley, 475 U.S. at 321).

---

[12]To be clear, as the Third Circuit observed in Brooks,
Defendants cannot be shielded from liability simply because
Plaintiff did not provide evidence of more than de minimis
injuries.  See 204 F.3d at 109.  But that "is not to say, as the
Hudson court observed, that the degree of resulting injury is not
highly relevant to the determination of the unreasonableness of
the force used; rather, it merely says that the absence of
objective proof of non-de minimis injury does not alone warrant
dismissal."  Id. at 108.

With regard to the July 25 incident, Plaintiff alleges in his Complaint that Officer Platt assaulted him, see Compl. page 5, and that Officer Keating assaulted him "in handcuff[s]."  See Compl. page 6.  Plaintiff also alleges in his Complaint the following regarding the October 15 incident:

> On October 15th, 2006, plaintiff was assaulted by defendants; officer Joseph Conrad, William Platt, and Timothy Keating at the Atlantic County Jail.
>
> Defendant[] Joseph Conrad had repeatedly punched plaintiff, while defendant Timothy Keating held his arms, and instructed Mr. Conrad to attack plaintiff.  Defendant William Platt also participated in the attack on plaintiff. Plaintiff was also handcuffed and unable to defend himself.
>
> Plaintiff had sustained very serious and significant bodily injury as a result of the beating by defendants.  Plaintiff had a broken tooth, ribs, stitches, and damage to his eye that required surgery.
>
> On or about August 11th, 2006, plaintiff had filed criminal charges on the defendants because of the brutality he was subject to at the Atlantic County Jail, and they had filed false criminal charges against plaintiff.
>
> . . .

Compl. page 9 at ¶¶ 1-6, page 10 at ¶ 10.

At the summary judgment stage, the Rules of Civil Procedure do not permit litigants to rest on their pleadings:

> [a] party asserting that a fact...is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials....

Fed.R.Civ.P. 56(c)(1).  The Court is mindful, however, that the Third Circuit has spoken of crediting a pro se prisoner's <u>allegations</u> as true in the excessive force context.  <u>See</u> <u>Brooks</u>, 204 F.3d at 109 ("[a]ccepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good-faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm"); <u>Smith v. Mensinger</u>, 293 F.3d 641, 649 (3d Cir. 2002)(...Smith alleges that he was handcuffed behind his back during the 'disturbance,' and he maintains he did not hit...or struggle with the guards as they punched and kicked him, and rammed his head into the wall.  If we accept Smith's version of the facts as true, as we must, there was simply no justification for the defendants' conduct....").  But in both <u>Brooks</u> and <u>Smith</u>, the pro se prisoner plaintiffs provided some form of a sworn statement to support their allegations either in the form of an affidavit or deposition testimony.  <u>See</u> <u>Brooks</u>, 204 F.3d at 105 ("Brooks responded to the motion by submitting an affidavit setting forth his version of the events and arguing that he had been provided with inadequate discovery."); <u>Smith</u>, 293 F.3d at 645 (citing the pro se plaintiff's deposition testimony).

27

In other words, neither the <u>Brooks</u> nor the <u>Smith</u> Court truly credited a pro se prisoner plaintiff's bare allegation.  Surely, to do so would violate Rule 56(c).  Rather, while recognizing that a pro se prisoner is in a "decidedly difficult position from which to generate 'record evidence' on his behalf," the Third Circuit has clearly required a plaintiff to provide some form of an affidavit or sworn statement.  <u>See</u> <u>Brooks</u>, 204 F.3d at 108.  Requiring an affidavit, declaration or other sworn statement provides the Court with some assurance as to the plaintiff's veracity and arms the Court with the imposition of sanctions against any plaintiff who submits an affidavit or declaration in bad faith, <u>see</u> Fed.R.Civ.P. 56(h), or otherwise commits perjury.  Such a requirement further prevents the absurd, and indeed unjust, result of requiring a trial any time a pro se plaintiff raises an allegation, no matter how specious and devoid of an evidentiary foundation.

Here, Plaintiff has provided the Court with a pretrial memorandum, wherein he appeared to attest that his statements were made under penalty of perjury.  But for clarity's sake, and given that Plaintiff filed no response to Defendants' summary judgment motion, the Court will require Plaintiff to provide an affidavit, declaration or other statement, <u>sworn under penalty of perjury</u>, explaining his account of events on July 25, 2006 and

October 15, 2006.[13]  The Court cautions Plaintiff that the
penalties of perjury are significant.  The Court further cautions
Plaintiff that any failure to comply with the Court's Order will
be viewed as indicating Plaintiff's intent to abandon his claims
against Defendants Platt, Keating and Conrad.  Plaintiff should
submit his statement of facts, sworn under penalty of perjury, by
the deadline listed in the Order accompanying this Opinion.

To further clarify the record, the Court will also require
Defendants to provide a copy of Plaintiff's deposition to the
Court and to Plaintiff before the deadline listed in the Order
accompanying this Opinion.[14]

## IV.  CONCLUSION

For the aforementioned reasons, the Court grants Defendants'
motion for summary judgment, in part, and reserves on the motion,

---

[13]See Fed.R.Civ.P. 56(e)(1) ("If a party fails to properly
support an assertion of fact or fails to properly address another
party's assertion of fact as required by Rule 56(c), the court
may...give an opportunity to properly support or address the
fact."); see also advisory committee's note to 2009 amendment,
Subdivision (e) ("...subdivision (e)(1) recognizes that the court
may afford an opportunity to properly support or address [a]
fact.  In many circumstances this opportunity will be the court's
preferred first step.").

[14]See Fed.R.Civ.P. 56(c)(3) (emphasis added)("The court need
consider only the cited materials, but it may consider other
materials in the record."); see also advisory committee's note to
2009 amendment, Subdivision (c) ("...the rule...recognizes that a
court may consider record materials not called to its attention
by the parties.").

in part.  Plaintiff's claims against Warden Gary Merline and Sergeant Steven Iuliucci are dismissed with prejudice.  The Court reserves decision on Plaintiff's claims against Officer William Platt, Officer Timothy Keating and Officer Joseph Conrad.

Plaintiff must submit an affidavit or other statement, sworn under penalty of perjury, explaining his account of events on July 25, 2006 and October 15, 2006.  In the event this Court has not recognized a claim that Plaintiff intended to assert, Plaintiff shall (1) identify the claim and (2) identify where in the record he raised the claim.

Defendants must provide the Court and Plaintiff with a copy of Plaintiff's deposition transcript before the deadline listed in the Order accompanying this Opinion.

An appropriate Order will issue this date.


Dated: June 8, 2011                    s/Renée Marie Bumb
                                       RENÉE MARIE BUMB
                                       UNITED STATES DISTRICT JUDGE